## Lombertino's Appeal

*Nathaniel S. Shaham*, for appellant.
*Abraham J. Levy*, for Commonwealth.

SLOANE, J., October 17, 1940.—The Secretary of Revenue suspended petitioner's operating privilege on the ground that he was operating a motor vehicle involved in a fatal accident. The Vehicle Code of May 1, 1929, P. L. 905, sec. 615 (*b*) 4, as amended by the Act of June 27, 1939, P. L. 1135, sec. 9, provides:

"(b) The secretary may suspend the operator's license or learner's permit of any person, after a hearing before

the secretary or his representative, whenever the secretary finds upon sufficient evidence . . . .

"4. That such person was operating any motor vehicle involved in an accident resulting fatally to any person . . . ".

The suspended operator appealed to this court in accordance with the provisions of section 616 of The Vehicle Code, as amended by section 10 of the Act of 1939, supra:

"Any person, whose operator's license or learner's permit has been suspended, or who has been deprived of the privilege of applying for an operator's license or learner's permit under the provisions of this act, shall have the right to file a petition, within thirty (30) days thereafter, for a hearing in the matter in the court of common pleas of the county in which the operator or permittee resides; and such court is hereby vested with jurisdiction, and it shall be its duty, to set the matter down for hearing upon thirty (30) days' written notice to the secretary, and thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license or learner's permit, or whether he may be deprived of the privilege of applying for an operator's license or learner's permit by the secretary under the provisions of this act."

In these matters, we do not, as in certain other appeals, become supervisory, or determine the limits of discretionary exercise by a board or administrative officer. Reading section 616, our duty is not to review; on the contrary "it is the duty of the court to hear de novo the witnesses of the Commonwealth and the witnesses of the licensee and, from the testimony taken, to determine anew whether the operator's license should be suspended": Commonwealth v. Funk, 323 Pa. 390, 399. We cannot even give attention to what transpired before the Secretary of Revenue, for at the hearing before us "neither the action of the Secretary nor the testimony taken before his representative is properly part of the record of the case": Commonwealth v. Cronin, 336 Pa. 469, 473.

Petitioner claims that he was not involved in a fatal accident. His claim is that he did not strike the dead man, but found him lying in the street while operating south on Tenth Street near Bigler Street, in Philadelphia. Perhaps that is so, for the Commonwealth's evidence is not clear, particularly since there was no witness to the contact between car and man. But we assume it to be a fact that petitioner's car was in the fatal accident. Still we see no reason for suspending petitioner's license. There is nothing at all before us to show how the accident occurred. There is no evidence that attaches blame to petitioner.

We do not think it just to suspend an operating privilege simply because a fatal accident has taken place. If we do that, we will no doubt have to suspend an operating privilege where there is no fault upon the operator. For fatal accidents may well happen without the fault of an operator. Highways are to be protected from careless or incompetent persons, but where there is no carelessness or incompetence we see no logic or public welfare in depriving an operator of his privilege simply because there has been an accident. We are not required now to decide that the legislature in its plenary power over highways has authority to make mandatory the suspension of a license merely upon proof of a fatal accident for, as the legislation on the subject now stands, we take it that the word "may" in the section quoted means that fault upon the operator involved in a fatal accident is to be shown before we will suspend. In this conclusion we find support in the following cases: Commonwealth v. Schmitt, 19 D. & C. 53; Commonwealth v. Szumski, 32 D. & C. 583; Commonwealth v. Bergenfield, 37 D. & C. 584.* We know that Commonwealth v. Wilson, 29 D. & C. 255, decided differently. There, the court acted upon the question whether the Secretary has the power to suspend in the absence of a showing of "negligence, criminal or otherwise" (pp. 256, 257). I prefer not to disagree with my respected col-

---

* Our research reveals no appellate court case.

league, but in view of the Funk decision, in appeals before us, the question is not whether the *Secretary* has the power to suspend, under, or in the absence of, certain circumstances, but whether the *court*, under the evidence, shall suspend: Commonwealth v. Szumski, supra, p. 590.

Since (as section 616 dictates) it is our duty after a hearing "to determine whether the petitioner is subject to suspension . . ." by the Secretary of Revenue, our determination of suspension will rest on the presence of circumstances that show a careless driver and not merely on an occurrence that could not be avoided by foresight or expectation. We thus have a "criterion of law" to base suspension.

If the Secretary of Revenue by virtue of the word "may" in the quoted section can suspend or not suspend as he sees fit, without basis or acceptable policy, he would indeed have uncontrolled discretion, which is no discretion at all. That would mean that he could suspend some licenses, and not others, though the circumstances of the respective cases approximated each other, and though all the operators, those suspended and those not suspended, had been involved in fatal accidents. Such delegation of authority to an administrative officer is unconstitutional. See Holgate Bros. Co. et al. v. Bashore et al., 331 Pa. 255, and cases therein referred to. By deciding as we do, we give the word "may" an interpretation that accords constitutionality. "In construing an act of the legislature it is incumbent upon the court to give it an interpretation, if possible, which will prevent its conflict with the constitution": Dauphin County Grand Jury Investigation Proceedings (No. 3), 332 Pa. 358, 365, citing section 52 of the Statutory Construction Act of March 28, 1937, P. L. 1019. See Driscoll et al., etc., v. Edison Light & Power Co., 307 U. S. 104, 115. The word "may" connotes discretion, and that word indicates "a discretion consistent with those immutable principles which govern the administration of justice, that is, a discretion reasonably based upon the attendant pertinent circumstances

from which its exercise arises, and which is the only range of discretion permissible to a judicial or quasi-judicial officer": Dauphin County Grand Jury Investigation Proceedings (No. 3), supra, p. 365.

The purpose of The Vehicle Code is public safety (read the preamble of the act) and the interpretation we give the word "may" is consonant with that purpose, and accords with what we conceive to be the intention of the legislature in enacting The Vehicle Code. We thought of construing the word "may" to mean "shall" but we conclude it not wise to give strained or hard thinking over a word with so common an acceptation of meaning and use (see section 33 of the Statutory Construction Act, supra). Moreover we note that in the very same Vehicle Code the legislature determined when to use the mandatory "shall": sec. 614.

We conclude that petitioner was not subject to suspension. The Secretary of Revenue will act accordingly.