## Carlton License

*Forrest J. Mervine,* for appellant.

*Peter P. Jurchak,* special deputy attorney general, for Pennsylvania Liquor Control Board.

DAVIS, P. J., December 9, 1948.—Appellant, Kenneth R. Carlton, the holder of a malt beverage license for premises situated in the Borough of Stroudsburg, Pa., made application to the Pennsylvania Liquor Control Board for a restaurant liquor license for the same premises. After due hearing the board refused the application for restaurant liquor license and assigned two reasons for its action, the first being that the quota for this type of license was exceeded in the Borough of Stroudsburg and the second reason was stated as follows:

"While it is conceded that Stroudsburg, Monroe County, is located within a resort area, the board is not satisfied that there is any need for additional restaurant liquor licenses, there being a sufficient number of such licenses now in effect in that municipality to amply provide for the needs of persons residing

in the community, as well as those who may have occasion to come into the area during the vacation season."

We will consider the first question: Would the issuance of a restaurant liquor license to the holder of a malt beverage license constitute a new license? The Luzerne County court first considered this question in 1939 in Kester's Appeal and sustained the board in its finding that such a license would be a new license under the Liquor License Quota Act of June 24, 1939, P. L. 806. An appeal was taken to the Superior Court and President Judge Keller in Kester's Appeal, 140 Pa. Superior Ct. 293, 296, said:

"The respective licenses authorized by the several statutes are different and distinct, and transfers or exchanges from one kind of license to the other are not contemplated, except on the basis of new applications, which are subject to the limitations prescribed by the Act of 1939, P. L. 806, supra. See Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, 10 A. 2d 899."

For the next five years this phase of the Liquor Law seemed to be settled. Then in the case of Appeal of Country Club of Harrisburg, 55 D. & C. 65, the Dauphin County court held that an *exchange* of a license is not a new license within the meaning of the statute and reversed the board. Subsequently, several courts followed the rule set forth in the Dauphin County case.

The Superior Court, in a recent case, Azarewicz Liquor License case, 163 Pa. Superior Ct. 459, after quoting Kester's Appeal, supra, said: "Nowhere in the Liquor Control Act is there authority for the proposition that one type of license may be *exchanged* for another." We willingly accept the opinion of the Superior Court and therefore, hold that the issuance of a restaurant liquor license to the holder of a malt

beverage license would constitute a new license under the Quota Act of 1939. The following cases discuss this question fully: In re Appeals from Pennsylvania Liquor Control Board, 58 D. & C. 300; North Penn Volunteer Fire Company Appeal, 58 D. & C. 392; Gaal's Appeal, 57 D. & C. 102.

The next question involves the following section of the Liquor License Quota Act of 1939, 47 PS §744-1003:

"The Pennsylvania Liquor Control Board shall have the power to increase the number of licenses in any such municipality, which in the opinion of the board, is located within a resort area."

The board concedes that Stroudsburg is located within a resort area.

The Liquor Control Board, and not the court, is the licensing authority. The appeal to the court of quarter sessions allowed by the act is for the purpose of preventing an arbitrary or unreasonable exercise of power or an abuse of discretion by the board: Shindor's Appeal, 19 D. & C. 596.

The term "discretion" has been defined as follows:

"In our own state it was said as long ago as Paschall v. Passmore, 15 Pa. 295, 304: 'The very term [discretion] itself, standing alone and unsupported by circumstances, imports the exercise of judgment, wisdom, and skill, as contradistinguished from unthinking folly, heady violence, and rash injustice. When technically employed in legal instruments, its proper acceptation is inseparable from the idea of dispassionate conclusion, having due regard to the rights and interests of others' ": Dauphin Co. Grand Jury Invest. Proc. (No. 3), 332 Pa. 358, 364.

Under the Quota Act the Borough of Stroudsburg is allowed seven licenses. At the time the application was made to the Liquor Control Board there were 15 licenses in effect of the type counted against the quota.

At the hearing before the examiner for the board the applicant and two witnesses, residents of Stroudsburg, testified that they were familiar with the resort conditions in Stroudsburg and in their opinion it was necessary to have another restaurant liquor license in Stroudsburg for the accommodation of the public. At the hearing on appeal appellant presented six additional witnesses who testified in part as follows:

John Freymuller, 55 North 10th St., Stroudsburg, Pa.

By Mr. Mervine:

"Q. And then in your opinion is it a necessity that Mr. Carlton have a liquor license for his establishment on Ninth Street?

"A. Well, I think in his neighborhood it is a necessity because he has a pretty fair clientele, and he has quite a lot of business, like he says, and I agree with him that if he had a liquor license he could do a better business and he could serve that part of the community better than he does now."

William Weber, 809 Scott St., Stroudsburg, Pa., retired baker.

By Mr. Mervine:

"Q. And from your observation as to business done by other establishments located in Stroudsburg, in your opinion do you think that the public necessity would require Mr. Carlton to have a liquor license, a full license?

"A. Well, I think Mr. Carlton ought to supply his trade with what they demand. I know we do."

Martha Bonser, 815 Sarah St., Stroudsburg, Pa.

By Mr. Mervine:

"Q. Go ahead and tell about the conditions of the places you mentioned.

"A. Well, just that I prefer, that there is lots more of parking space, and they are not as much crowded up to Kenny's, and I think if he would have it, why

there would be—well, he just, I think he would do better business."

Helen Mader, a former employe of Town Tavern and Friendly Inn, licensed establishments in the Borough of Stroudsburg; Mrs. Helen Fields, a clerk in the A. & P. store, and Mrs. Margaret Kimari, a secretary, testified that in their opinion it was necessary for the convenience of the public that a liquor license be granted to Mr. Carlton. The board presented seven witnesses, all of whom were holders of restaurant or hotel liquor licenses in the Borough of Stroudsburg, who generally testified that at all times they were able to provide proper service for all the persons who frequented their places of business; that in fact they could properly accommodate at least 25 percent more people. Five other witnesses, holders of liquor licenses in Stroudsburg, were present in court. It was stipulated that their testimony would be to the same effect as testimony of the witnesses previously called by the board.

An analysis of the testimony of witnesses Freymuller, Weber and Bonser indicates they believe the license should be granted because it would be advantageous to the applicant and convenient for his customers. But that is not the test. The test is: Are there adequate and proper facilities in the Borough of Stroudsburg for these customers, together with all the other people including the resort population, to obtain the various types of intoxicating liquor authorized to be dispensed under a restaurant liquor license? If, in the reasonable exercise of its discretion the board finds that the facilities are adequate then it has no power under the statute to grant the license.

Considering the fact that the number of licenses in the Borough of Stroudsburg are more than double the quota and considering all the testimony, including the license holders who are in a position to know the true

facts, we cannot say that the action of the board in refusing this application indicates unthinking folly, heady violence or rash injustice. We agree with the board in the action taken; therefore, the appeal is dismissed.

And now, December 9, 1948, the appeal is dismissed and the order of the Pennsylvania Liquor Control Board is sustained; costs to be paid by appellant.