## Hufnagle *v.* Delaware & Hudson Company, Appellant.

*Jury and jurors—Challenges for cause—Employer and employee.*

1. No person should be permitted to serve on a jury who stands in any relation to a party to the cause that would carry with it prima facie evident marks of suspicion of favor, as where a litigant is in a position where he might exercise a control over a juror, such as the relation of master and servant or that of employer and employee.

The rule is applicable to a miner and colliery superintendent employed by a mining company.

*Evidence—Official records—Weather bureau—Diaries—Opinion—Condition of land—Competency of witnesses—Waters—Negligence.*

2. The regular official record of a weather bureau as to the amount of precipitation each day may fairly be considered proper evidence but this does not cover a mere diary kept by some one other than the witness testifying, several years before the witness became attached to the weather bureau, especially where the matter sought to be proven by such diary is in no sense scientific data but consists largely of the individual opinion of the person who made the entries.

3. Where a weather bureau official has given data as to the temperature and precipitation on the dates of a certain flood, and also given his professional opinion as to what would and what would not constitute an extraordinary precipitation, giving figures, it is for the jury to determine whether or not the particular flood was an extraordinary one, and there is no necessity for the witness's opinion on the subject.

4. Where the plaintiff and his witnesses give testimony sufficiently describing the character and condition of his property before certain floods, which are alleged to have done damage to such property, after which witnesses are offered to state the expense of restoring the land to its prior condition, the fact that some of these witnesses have not gained their knowledge of the condition of the land prior to the floods by personal investigation will not debar them from giving the cost of restoring the property to the condition the other witnesses say it was then in.

*Practice, C. P.—Trial—Charge—Language of points.*

5. The trial judge is not bound to adopt the language of points, but may choose his own form of expression, and if it gives the law fully and with substantial accuracy, nothing further is necessary.

Argued Feb. 23, 1910. Appeal, No. 253, Jan. T., 1909, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1902, No. 774, on verdict for plaintiff in case of J. G. Hufnagle v. Delaware & Hudson Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Trespass for damages for flooding land by impeding natural flow of a river. Before STAPLES, P. J., specially presiding.

The facts appear in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $10,000. Defendant appealed.

*Errors assigned* were the improper admission and rejection of evidence, improper charge and erroneous refusal to charge the jury as requested by defendant, and in sustaining challenges of jurors.

*James H. Torrey,* of Welles & Torrey, with him *Willard, Warren & Knapp,* for appellant.

*M. J. Martin,* with him *John P. Kelley, R. W. Rymer* and *I. H. Burns,* for appellee.—One who is in the employ of one of the parties was incompetent as a juror at common law and is generally so regarded at the present time: Central R. R. Co. v. Mitchell, 63 Ga. 173; Hubard v. Rutledge, 57 Miss. 7; Railroad Co. v. Mask, 64 Miss. 738 (2 So. Repr. 360); Burnett v. Burlington, etc., R. R. Co., 16 Neb. 332 (20 N. W. Repr. 280).

OPINION BY MR. JUSTICE MOSCHZISKER, March 14, 1910:

At the trial in the court below it was charged that the defendant by the construction of a narrow gauge mine railroad, and by the deposit in the bed of the stream of material from an old mine drift, had so obstructed the channel of a river that the water became dammed up and broke the banks, overflowing and causing serious damage to plaintiff's property. Holes or ravines were washed in the surface, and large quantities of culm were deposited upon the land of the plaintiff. The injury occurred during certain floods in the years 1901 and 1902.

The defendant denied that the river broke the banks because of any obstructions placed therein by it; contending that the breaks had come from the natural force of the stream in flood times, and that the overflow had followed well defined water channels over the land of the plaintiff; further, that the floods in question were extraordinary in character, and the real damage was not caused by the breaking of the banks of the river, but by the overflow of a creek in the vicinity which carried culm and ashes down upon the land of the plaintiff. The defendant claimed that the railroad track complained

of could not have caused the damage which came from the early flood of 1901, since it was not constructed until a later period. A verdict was rendered for the plaintiff, and the defendant has taken an appeal to this court. There are twenty-seven assignments of error, which for the purposes of our present consideration may be grouped into four classes: (1) The rulings of the trial judge in sustaining challenges to certain jurors. (2) Rulings on evidence. (3) Answers to certain of defendant's points. (4) Complaints against portions of the charge.

In the calling of the jury counsel for the plaintiff challenged two of the panel for cause, alleging that they were employed by the defendant company. The court sustained the challenge stating: "Taking it as a fact that the only ground for challenge for cause is that these two jurors are simply employees, one a miner and the other a division superintendent of some of the collieries of the defendant Company, the court is of opinion that the challenge should be sustained." While no Pennsylvania case with facts precisely like the one under consideration has been called to our attention, yet the general principle is laid down in our cases that no person should be permitted to serve on a jury who stands in any relation to a party to the cause that would "carry with it prima facie evident marks of suspicion of favor," as where a litigant is in a position where "he might exercise a control over the juror," such as the relation of master and servant: Pipher v. Lodge, 16 S. & R. 214; Harrisburg Bank v. Forster, 8 Watts, 304; Cummings v. Gann, 52 Pa. 484. In the present case the trial judge applied the rule to the relation of employer and employee, and in this there was no error.

We find no reversible error in any of the rulings of the trial judge on the admission or rejection of evidence. The only assignments under this heading which require special notice are those going to the rulings upon the testimony of the weather bureau official, and upon the testimony of certain witnesses as to the expense of restoring the land to its condition before the flooding. The weather bureau station was about six miles from the location of the land in question. The

official in charge was permitted to read from the records and to testify at large upon the temperature and precipitation at or about the times of the various floods complained of, and to tell the nature thereof, whether rain or snow. Being then asked to turn to his journal and having done so he gave an answer which did not contain exact data, but stated facts concerning the weather at a certain time; namely, that it had caused the rivers and streams to rise rapidly and to overflow low lying adjacent lands; that certain lives had been lost, and "had it not been for the warning to prepare for floods and the snow melting rapidly the loss of life and damage would doubtless have been greater." An objection to this answer was sustained and the testimony ordered stricken from the record, the trial judge stating: "The court is of opinion that the regular official record of the weather bureau as to the amount of precipitation each day might fairly be considered proper testimony, but as to the mere diary kept by some one in the office we clearly think it is objectionable, because it is largely the opinion of the man who writes it." It is true that in answer to a leading question as to whether the diary was required to be kept by the Government and was one of the official records, the witness said "Yes." But it appeared that the book had not been kept by the witness, but by someone in the office several years before he had become attached to the station. Under these circumstances, considering the fact that the matter sought to be proven by the diary was in no sense scientific data, but consisted largely of the individual opinion of the person who made the entries, there was no error in its exclusion. The question was put to this witness "I will ask you whether from the records which you have in your office and to which you have referred in your opinion the storm of February 26th, 27th and 28th, 1902, was or was not an extraordinary flood?" The question was objected to and the objection sustained. The witness was not upon the ground in 1902. He could and did give the data as to the temperature and the precipitation on the dates in question, and he also expressed his professional opinion as to what would and what would not constitute an extraordinary precipitation, giving figures; as these data were be-

fore the jury, it was for them to determine the question of the character of the flood from the evidence, and there was no necessity for the witness's opinion on the subject. Counsel for the defendant offered to "show the precipitation immediately prior to October 12th, 1903, for the purpose of showing that there had been a considerable flood at that time, which in connection with the testimony of Mr. Kemp as to the time when some of the photographs were taken would tend to explain to the jury the conditions as they appear in these photographs." The offer was objected to and the objection sustained, the trial judge saying: "This is a kind of argument from premises to conclusion, the court believes is based upon premises too uncertain to permit the fact going to the jury to determine the matter." The flood of October 12, 1903, was not directly in issue, and as the matter offered was on a collateral point, it was within the discretion of the trial judge to say whether or not he would allow it.

The plaintiff and his witnesses gave testimony sufficiently describing the character and condition of his property before the floods which caused the damage; thereafter witnesses were offered to state the expense of restoring the land to its prior condition. The fact that some of these witnesses had not gained their knowledge of the condition of the land prior to the floods by personal investigation would not debar them from giving the cost of restoring the property to the condition the other witnesses said it had then been in.

As to the refusal to expressly affirm certain of the defendant's points, we may say that the trial judge is not bound to adopt the language of points, but may choose his own form of expression, and if it gives the law fully and with substantial accuracy, nothing further is necessary: Com. v. Lewis, 222 Pa. 302. In the present case the points in question were sufficiently covered in the general charge, which was all that the defendant was entitled to ask.

It would serve no useful purpose to further discuss the various assignments, except to state that none of them show anything approaching reversible error. The case was submitted to the jury in a comprehensive and accurate charge

wherein all of the issues were plainly pointed out with clear and relevant instructions on the law; and at the end the trial judge said: "The Court desires to know from counsel on both sides if it has omitted to charge upon any substantial matter, or made any mistake." To which counsel for the defendant answered "No." The complaints now made concerning abstract parts of the charge are without merit and cannot be sustained.

The assignments of error are all overruled, and the judgment is affirmed.