403 So.2d 1071 (1981)
INTERNATIONAL INSURANCE COMPANY, American Home Assurance Company, Federal Insurance Company, Palm Beach Towers Condominium Association, Inc., and Merchant Police of the Palm Beaches, Inc., Appellants,
v.
Frederick E.M. BALLON, et al., Appellees.
No. 79-1473.
District Court of Appeal of Florida, Fourth District.
September 9, 1981.
*1072 Montgomery, Lytal, Reiter, Denney & Searcy, Larry Klein, West Palm Beach, and Karon, Morrison & Savikas, Chicago, Ill., for appellant International Ins. Co.
Richard A. Sherman of Wicker, Smith, Blomqvist, Davant, Tutan, O'Hara & McCoy, Miami, for appellant American Home Assurance Co.
Steven R. Berger of Carey, Dwyer, Cole, Selwood & Bernard, P.A., Miami, for appellant Federal Ins. Co.
*1073 Magill & Reid, P.A., Palm Beach, and Edna L. Caruso, West Palm Beach, for appellant Palm Beach Towers Condominium Ass'n, Inc.
J. Burke Culler, Jr. of Adams, Coogler, Watson & Smith, West Palm Beach, for appellant Merchant Police of the Palm Beaches, Inc.
Louis L. Williams of Farish, Farish & Romani, West Palm Beach, for appellees.
Thomas E. Kingcade and Jack S. Cox of Levy, Plisco, Shapiro, Kneen, Kingcade & McCarthy, P.A., Palm Beach, for appellees Harold Hassenfeld and Harold Rosenthal.
LETTS, Chief Judge.
This appeal results from the granting of a new trial in favor of certain plaintiff condominium unit owners who suffered first an adverse directed verdict in favor of one defendant at the close of the plaintiffs' case and later on an adverse jury verdict as to all other defendants. The suit, filed by said unit owners against the condominium association, the association's officers and directors, and the independently contracted for security guard service, was predicated on the alleged negligence of the defendants being the proximate cause of the loss of valuable possessions stolen from commonly located safety deposit boxes which were broken into and ransacked during the course of a major and successful nighttime robbery. We reverse.
Addressing ourselves first to the trial judge's change of heart as to the directed verdict in favor of the security guard service at the close of the plaintiffs' case, we are convinced he erred in basing the rescission of it on "testimony presented in the [remaining] defendants' case" (emphasis supplied). By the time the trial progressed to the point where the remaining defendants put on their defense, the successful recipient of the directed verdict had ceased to be a defendant and was long gone home rejoicing, because the unit owners had failed to present a prima facie case of negligence against it. Our reading of the record supports that directed verdict and it was improper to resurrect the issue, in absentia, by way of facts and circumstances emerging from the testimony of, and the evidence from, the remaining defendants during the presentation of their defense. See Fish Carburetor Corporation v. Great American Insurance Company, 125 So.2d 889, 892 (Fla. 1st DCA 1961); Tillman v. Baskin, 260 So.2d 509 (Fla. 1972) and H. Trawick, Florida Practice & Procedure § 22-13 (1980).
Notwithstanding the foregoing, the unit owners argue that the trial judge's decision to rescind the directed verdict was not merely grounded on testimony presented in the remaining defendants' case but also upon "further consideration." They thus suggest that the further consideration was in fact a reexamination of the plaintiffs' case. However, the trial judge did not so state and the language employed appears to be only of the "boiler-plate" variety. Even if he did intend a re-examination of the plaintiffs' case, it would have been insufficient to merely incant the words "upon further consideration." Obviously the rescission of the directed verdict under the facts of this case and under the language of the trial court's order, was a grant of a new trial against the recipient of the directed verdict. This being so, we are of the belief that the trial court would be required to "articulate reasons for so doing so that the appellate courts may be able to fulfill their duty of review." Wackenhut Corp. v. Canty, 359 So.2d 430, 435 (Fla. 1978). The words "upon further consideration" fall far short of any such requirement. We conclude the directed verdict must be reinstated.
Passing next to the judge's grant of a new trial to the unit owners, notwithstanding a jury verdict for the remaining defendants, we begin by setting forth the judge's order in pertinent part:
THIS CAUSE came before the Court on Plaintiffs' Motion for a New Trial, and other motions. After argument of counsel, and having been fully advised in the premises, the Court finds as follows:
1. The Palm Beach Towers Condominium was robbed the night of April 14, *1074 1976. Plaintiffs had just returned to their apartments after having celebrated Passover, a religious holiday. Most of the Plaintiffs were retired winter residents and all were very wealthy. The jury's verdict was adverse to Plaintiffs and, very likely, was based upon prejudice. The Court observed from the Bench that most of the jurors were inattentive after the first two days of a lengthy thirteen-day trial.
The jurors were given full-sized legal pads to take notes. Counsel agreed to this procedure because of the alleged losses consisting of hundreds of individual items of jewelry amounting to millions of dollars. The Court further observed that only a few of the jurors were interested enough to take notes, and several did not take any notes. The Court reasonably concludes that many of the jurors had made a decision long before the testimony had been completed. The verdict in this case was clearly contrary to the manifest weight of the evidence.
2. The Court may have committed error in allowing confusing jury instructions as to gross negligence and simple negligence, and in failing to explain the different application to each defendant.
3. The Court should not have allowed witnesses Richard Duncan Pearson and Richard Kellogg to give opinion testimony when neither witness was qualified as an expert, and as to Richard Duncan Pearson, allowing his testimony when Plaintiffs were precluded from testing his knowledge and the basis of his opinions since he refused to answer questions relating to specific crimes and robberies committed by him in the past.
4. * * *
5. The Court, in an attempt to be fair, allowed counsel for the Defendants to exhibit conduct which far exceeds the bounds of advocacy. The Court did not restrain Defendants' counsel which it should have done, and as a result the jury was prejudiced by the forward, overzealous, aggressive, abrasive and at times obnoxious, conduct by Defendants' counsel toward Plaintiffs, Plaintiffs' counsel and the Court.
Therefore, based upon the foregoing, it is
ORDERED AND ADJUDGED that the aforesaid errors deprived Plaintiffs of a fair and impartial trial and, in the interest of justice, a new trial is hereby granted in this cause against all Defendants.
Appellate review of this order requires us to revisit the tension between the twin theories discussed in Wackenhut Corp. v. Canty, supra. On the one hand, we again acknowledge the rule that when substantial competent evidence is presented to the jury, its verdict should not be disturbed absent a showing that the jury was deceived by the evidence or influenced by outside considerations. On the other hand, we also acknowledge the rule of broad discretion which imparts to the trial judge the authority to grant a new trial when he concludes that the verdict is against the manifest weight of the evidence or if he determines the jury has been influenced by extra-record considerations or misled by the force and credibility of the evidence. In Weems v. Dawson, 352 So.2d 1196 (Fla. 4th DCA 1977), cert. denied, 359 So.2d 1221 (Fla. 1978), this court, based on the facts in that case, opted in favor of the latter doctrine and indeed in Wackenhut, which came later, the Supreme Court also seemed to favor the broad discretion rule. See Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980) and Ford Motor Company v. Kikis, 401 So.2d 1341 (Fla. 1981). However, the Wackenhut court was careful to add that although the trial court is in a better position to pass on the ultimate correctness of a jury verdict, "superior vantage point does not give a trial judge unbridled discretion to order a new trial" and he must give reasons for it in order to "facilitate intelligent appellate review." Id. at 434.
Such back and forth transfer of the power to decide ultimate correctness is somewhat reminiscent of spectators' heads during a tennis match, but we conclude from Wackenhut that the ball is squarely back in our court, so that we are charged with the *1075 authority to examine the trial judge's "reasons" for ordering the new trial. We have done so and we find them wanting.
The trial court's order initially stated that the jury verdict was "very likely based upon prejudice." What prejudice, and how likely? After the quoted words, the ensuing sentence in the order indicates that the prejudice may have been inattentiveness, but the two preceding sentences suggest obliquely that there may have been some anti-Semitism and antipathy to wealth.[1] As to those two preceding sentences, neither the anti-Semitism nor antipathy to wealth is explained or illustrated and we cannot be sure the former was even intended. Moreover, the unit owners were largely suing their own directors and their own association, composed of fellow unit owners, so we cannot discern why the prejudice, if any, would not apply equally to both sides.[2] This alleged prejudice was not alluded to in the motion for a new trial.
As to the stated inattentiveness of the jury, surely sometime during the trial the court or somebody would have commented on this inattentiveness and thus have a record of it. Further, 58 Am.Jur.2d New Trial, § 95 indicates that there have been few cases in which new trials have been granted because of the inattentiveness of jurors and that it is incumbent upon the moving party to show prejudice because of such inattention. Moreover, it is against public policy to inquire into the motives of, and influences on, a jury. "Thus, inquiry is proper only in such cases involving matters extrinsic to the verdict such as arrival at the verdict by lot or quotient, improper contact with a juror or misconduct of a juror; investigation of the subjective decision-making process of the jury is not permissible." Kirkland v. Robbins, 385 So.2d 694, 695 et. seq. (Fla. 5th DCA 1980).
In consequence, we are of the opinion that no reversible prejudice was shown other than by the judge's bald statement that it "very likely" existed. We find this insufficient and again note it was a subject not broached in the motion for a new trial.
In the next paragraph of the court's order, still pursuing the inattentiveness of the jurors, it is set forth that the court observed only a few of the jurors "interested enough" to take any notes. We can find no authority for granting a new trial because of lack of note-taking. The court goes on to "reasonably conclude" that "many of the jurors had made a decision long before the testimony had been completed." We believe this bare conclusion would be inadequate under Kirkland, supra. The court completes this paragraph by stating that the verdict was clearly contrary to the manifest weight of the evidence. Again we think this bare statement without more specificity as to why not, does not meet the Wackenhut test. The record is replete with testimony and evidence which would reasonably support the jury verdict. We cannot conclude to the contrary from the trial court's order as set forth.
The trial judge's next reason that it "may have" committed error in allowing confusing jury instructions as to gross negligence and simple negligence, and in failing to explain the different application of them as to each defendant, was also erroneous. We have read and re-read the instructions given, many of which were of the standard variety and all appear capable of being understood. We are not in a position to state with certainty that the jury was not confused, for indeed absolutely correct jury instructions are quite often complicated and perhaps confusing to the average layman. However, we are in a position to state that there is nothing in the record to bolster the *1076 trial judge's equivocal conclusion that the jury "may" have been confused in this case. Moreover most of the instructions were supplied by the unit owners and few objections were lodged against those given.
Without a laborious setting forth of all the instructions asked for, given and denied, we hold that there were sufficient, unobjected to, understandable instructions given which sufficiently identified the issues and which correctly stated the law. This being so the instructions submitted to the jury were adequate and in any event did not rise to the level of reversible error nor constitute grounds to support the grant of a new trial.
The third numbered reason in the judge's order was that the court should not have allowed two non-expert witnesses to give opinion testimony, and should not have prevented plaintiffs from testing one of these witness's knowledge after he refused to answer questions relating to specific crimes and robberies committed by him in the past.
This aspect of the appeal provides a vehicle to yet again ask the always fascinating question: What is an expert? The definition set forth in the Florida Rules of Civil Procedure, Rule 1.390(a)(1981) appears guileless enough and defines an expert witness, in pertinent part, as "one possessed of special knowledge or skill about the subject upon which he is called to testify." That sounds relatively easy to understand and implement, but in reality whether or not a witness can give expert opinion testimony in any given case presents all kinds of problems. See, for example, C. Erhardt, 5 Florida Practice, Evidence § 702.1 (1977). Nicholas Murray Butler, former President of Columbia University, in a commencement address, gave his oft quoted tongue-in-check definition of an expert as "one who knows more and more about less and less." Wigmore suggests that, basically, expertness is the "skill to acquire accurate conceptions" and that such skill "comes from circumstances which may be broadly summed up by the term `experience'." Wigmore on Evidence, Testimonial Qualifications, § 555 (3d Ed. 1940).
In the case at bar, the court's decision to allow the opinion testimony of the two witnesses in question was not error, because we conclude that they should have been qualified as experts. Accordingly it would appear that his decision to let them testify was an example of the trial judge being right for the wrong reason. Firestone v. Firestone, 263 So.2d 223 (Fla. 1972). In so concluding, we are not unaware that "it is for the trial court to determine whether or not the witness has been shown to possess the requisite qualifications and special knowledge to warrant his so testifying and the decision of such trial court is conclusive on the point unless it appears from the transcript to have been erroneous." Harvey v. State, 176 So. 439, 440 (Fla. 1937) (emphasis supplied).
Reference to the transcript in the case now before us reveals that the two witnesses in question were basically being called to testify about how relatively easy it is for professional criminals to foil burglar alarm systems and open safety deposit boxes, a fact not known to the average layman as a matter of common knowledge. In this regard the two witnesses obviously had experience, special knowledge, training, and education coming out of their ears. The first was a senior police officer formerly with the FBI and possessed of over 30 years experience, many of them investigating burglaries and robberies involving burglar alarms and safety deposit boxes. The second witness was a notorious long-time thief who had participated in countless robberies involving alarm systems and many with safety deposit boxes. He had become an expert in electronics and he even taught courses on the subject to fellow prisoners.
Given all this on-the-spot experience and training, it is hard indeed to understand why they were not experts in the realm in which they were asked to testify. However, even if we are wrong, many other witnesses testified on the same subject matter so that the testimony was merely cumulative.
*1077 Finally, we view as insignificant the problem of not being able to further examine the long-time thief about other crimes he had committed, relative to which he took the fifth amendment. The witness readily identified many of his "scores." His failure to identify still other unspecified ones was not material to the main issues of this cause and the jury was well aware of his prolific criminal past.
Accordingly we determine the grant of a new trial on this issue was in error.
The court's final enumerated reason for a new trial was:
The Court, in an attempt to be fair, allowed counsel for the Defendants to exhibit conduct which far exceeds the bounds of advocacy. The Court did not restrain Defendants' counsel which it should have done, and as a result the jury was prejudiced by the forward, overzealous, aggressive, abrasive and at times obnoxious, conduct by Defendants' counsel toward Plaintiffs, Plaintiffs' counsel and the Court.
We think this too is insufficient. The unit owners state that they did object to the behavior of defense counsel, but they offer no citations to the record. Nor did the court point to, or specify, any of the obnoxious behavior. Indeed it is not uncommon for lawyers to be "forward, overzealous, aggressive, abrasive and... obnoxious." If such behavior is to be reversible it must, at a minimum, be objected to and preserved for appeal or be commented on by the judge with specificity. See Nelson v. Reliance Insurance Co., 368 So.2d 361 (Fla. 4th DCA 1978). Even the Appellees' brief makes no specific reference to the alleged obnoxious behavior but merely sets forth a (and we paraphrase) "It-doesn't-show-up-in-the-record-because-it-was-intangible, -but-believe-us-it-was-bad" kind of argument. We simply cannot sustain the ruling on such advocacy, especially when the obnoxious behavior was not even included as grounds for a new trial.
From the sum of all that we have written, we therefore conclude, as did the Supreme Court in Wackenhut, that the trial judge in this case acted as a seventh juror with veto power. "The province of the jury ought not to be invaded by a judge because he raises a judicial eyebrow at its verdict." Id. at 437.
REVERSED AND REMANDED WITH INSTRUCTIONS TO ENTER A FINAL JUDGMENT IN ACCORDANCE HEREWITH.
GLICKSTEIN, J., and RIVKIND, LEONARD, Associate Judge, concur.
NOTES
[1] The chosen division and wording into two paragraphs of the first numbered point in the judge's order is somewhat confusing in that the content of each paragraph appears to jump back and forth between prejudice, inattentiveness and the manifest weight of the evidence. Nonetheless we discuss the language in the same chronological order so as to avoid any possibility of distortion. As a result, however, this portion of our opinion is similarly disjointed.
[2] We recognize that several insurance companies were also named defendants. However there is no showing of prejudice in their favor.