627 So.2d 1248 (1993)
METROPOLITAN DADE COUNTY, APPELLANT,
v.
FRANK J. ROONEY, INC., Appellee.
No. 92-2613.
District Court of Appeal of Florida, Third District.
December 7, 1993.
Robert A. Ginsburg, County Atty., and Murray Greenberg and Cecilia M. Altonaga and Eric K. Gressman, Asst. County Attys., for appellant.
James E. Glass and Linda Dickhaus Agnant, Miami, for appellee.
Before BARKDULL, JORGENSON and LEVY, JJ.
PER CURIAM.
This appeal questions the propriety of an order granting a motion for new trial which reads in part as follows:

*1249 The COUNTY prepared and furnished to all qualified bidders a bid package for the construction of the "Stockade Pretrial Detention Facility" (the "Project") in Dade County, Florida. The Project was to be constructed pursuant to the plans and specifications prepared by the COUNTY's Architect/Engineer (hereafter "COUNTY's Architect"). ROONEY was the successful bidder and on December 17, 1985, entered into Proposal Agreement Between Dade County and Contractor (the "Contract") for the contract sum of $39,010,000.00, which required ROONEY to complete construction of the Project within 730 calendar days.
The Contract had two provisions relating to what is known in the industry as "delay damages". One provision, usually called a "No Damage for Delay" clause, sought to limit the COUNTY's liability to ROONEY to $1,000/day for delay to the Project not caused by ROONEY. The other provision, a "Liquidated Damages" clause, assessed damages of $2,500/day against ROONEY in favor of the COUNTY for each day the Project was delayed by ROONEY.
ROONEY commenced construction in January of 1986 and immediately encountered problems with the plans and specifications. The first major problem encountered was the pilings. The COUNTY's Architect designed piles to support the building. Under the Contract, ROONEY was to install the piles and have them tested to see if the piles as designed by COUNTY's Architect would support the building. The tests failed and the COUNTY's Architect had to redesign the piles, which caused a delay to the Project.
As a result of the piles being redesigned, the COUNTY's Architect had to redesign the pile caps, then the columns, the sheerwalls, and the beams  these elements constitute the basic superstructure of the Project. Suffice it to say that the COUNTY's Architect's original design was altogether inadequate and that each stage of redesign by the COUNTY's Architect further delayed construction by ROONEY.
* * * * * *
During construction, the COUNTY did not grant time extensions to ROONEY for these delays. The few "time extensions" the COUNTY offered were contingent upon limiting ROONEY to $1,000/day for its costs associated with the delay, rather than the actual substantial costs incurred by ROONEY and its subcontractors as a result of the COUNTY's Architect redesigning the structure while ROONEY was trying to build it. Additionally, during the Project, ROONEY and its subcontractors were required to perform additional work and make changes to the work for which they claimed compensation, which the COUNTY denied. At the conclusion of the Project, the COUNTY did not pay ROONEY its contract balance of approximately $2,500,000.00, which included sums owed to ROONEY's subcontractors  many of whom were small operators  caught up in the cross-fire between the principal combatants.

Procedural History
ROONEY, for itself and for the use and benefit of its subcontractors, instituted this action against the COUNTY to recover (1) the contract balance, (2) the cost associated with the many changes to the Contract [called Requests for Change Order (RCO's)] and (3) damages for delay. ROONEY's subcontractors were not in direct privity with the COUNTY and therefore had no direct right of action against the COUNTY. As a general contractor, ROONEY was entitled to pursue its own claim and those of its subcontractors against the COUNTY. Public Health Trust of Dade County v. Harrison, 454 So.2d 659 (Fla. 3d DCA 1984).
ROONEY's Complaint pled facts which as a matter of law made the No Damage for Delay provision limiting damages for delay to $1,000/day unenforceable. The COUNTY sought to limit ROONEY to $1,000/day and filed a Motion for Summary Judgment which was heard by the Honorable John A. Tanksley, the fourth judge to whom the case was assigned. Judge Tanksley denied the motion as follows:

*1250 `This motion sought to limit the contractor's claim for delay damages to $1,000.00 per day in accordance with the contract limitation as a matter of law. The Court, having heard argument of counsel and being otherwise duly advised in the premises for the reasons articulated by the Court at the hearing, it is hereupon ORDERED and ADJUDGED that the Motion for Partial Summary Judgment be and the same is hereby denied.'
The `reasons articulated by the Court at the hearing' were:
`THE COURT: My concern really is resolving something on a summary where there has been long delays, which in effect keeps these people on much longer than the contract required, and whether that was an unreasonable delay and a knowing delay because of failure to properly have everything available for them to build the building as it ultimately was put up. I will deny it. They are entitled to it.'
The parties then proceeded with massive discovery and various judges (some 9 judges presided over this case at one time or another) entered various orders. The trial was finally scheduled to commence at `a time certain' on September 21, 1991, and the COUNTY was ordered to itemize its damages. The COUNTY presented a `Summary' of over $11 million, the bulk of which was the COUNTY's alleged `actual' damages for delay in construction completion. For example, the COUNTY sought approximately $7 million for `temporary jail facilities', etc., that the COUNTY claimed it had to build because of the delay in completing the Project.
ROONEY filed Motion for Partial Summary Judgment on the Liquidated Damages provision to obtain a proper legal determination of the right of the COUNTY to claim `actual damages' in view of the specific Liquidated Damages set by the COUNTY in the Contract. ROONEY subsequently filed a Motion in Limine to preclude the COUNTY from offering its highly prejudicial evidence of `actual damages', on the basis that there simply exists no legal authority that would allow the COUNTY to recover its actual damages. The COUNTY offered no legal authority to support the COUNTY's argument that it had a right to recover actual damages, the Liquidated Damages provision notwithstanding.
* * * * * *
This procedural history is necessary to understand that at the time this action came before this Court for trial, the action had been assigned to numerous judges, and this Court was confronted with a number of seemingly inconsistent and confusing pretrial orders which tended to suggest that the Jury should determine everything, even legal questions about the Contract such as whether the COUNTY could recover actual damages irrespective of the Liquidated Damages provision.
* * * * * *
Several times during the trial, the Court considered declaring a mistrial but refrained from so doing because of the time and expense involved to the parties and the public.
With this procedural backdrop, the Court first addresses ROONEY's Motion for a New Trial (`Motion for New Trial'). ROONEY's Motion for New Trial asserts five grounds for a new trial. The Court has considered the Motion for New Trial together with Metropolitan Dade County's Memorandum in Opposition to Rooney's Motion for New Trial and finds as follows:

Issue I
ROONEY Was Not Afforded the Full Opportunity to Obtain a Panel of Jurors Who Were Unbiased and Unprejudiced Concerning the Issues Involved in the Instant Litigation
This issue is directed to Juror Martha Jane Welt, an employee of Jackson Memorial Hospital, who stated during voir dire that `I think I would feel a certain possible loyalty towards the County'. ROONEY had exercised all of its preemptory challenges and challenged Ms. Welt for cause, which challenge was denied.
ROONEY contends that pursuant to Section 25 A-1 of the Code of Metropolitan Dade County, and Chapter 73-102 Laws of *1251 Florida 1973, The Public Health Trust of Dade County, Florida was established as an agency and instrumentality of Dade County, and therefore, as an employee of Jackson Memorial Hospital, Ms. Welt is an employee of Dade County. Rule 1.431(c)(1), Florida Rules of Civil Procedure, provides that if a juror does not stand indifferent to the action or if a juror is an employee of a party, then a party's objection to that juror should be sustained. In retrospect, the Court should have disqualified Ms. Welt as a biased potential juror.

Issue II
A Juror's Expression of Prejudice, Partiality and Antagonism During the Trial Proceeding Was Detrimental to ROONEY and Prevented ROONEY From Obtaining a Fair Trial
The next issue raised by ROONEY in its Motion for New Trial is directed to Juror Gibson who during the course of trial was audibly negative and disbelieving, used profanity while ROONEY's witnesses were testifying; shook his head negatively; commented `Here we go again'; and wrote notes on his note pad and displayed the notes to other jurors.
During the trial, the Court repeated its instructions to the Jury not to discuss the case, not to share notes, and admonished that each juror should rely upon his or her individual notes and not the note of other jurors. Nonetheless, ROONEY asserted that Juror Gibson continued the disruptive conduct without the knowledge of ROONEY.
The COUNTY argues that ROONEY has waived this objection by not moving for a mistrial. ROONEY contends that it was not aware of the continuous profanity and negative conduct expressed by Juror Gibson until after the Jury retired to deliberate. At that time ROONEY represented that it was first alerted by the Court Reporter of possible improper conduct by Juror Gibson, but even then ROONEY did not know of the extent of this conduct until after the Court Reporter transcribed Juror Gibson's negative comments which was after the Verdict and after the Jury had been discharged.

Issue III
The Jury's Improper Contact and Communications With a Dade County Employee During the Course of Trial Provided the County with Confidential Information Regarding the Jury's Deliberations and Had a Prejudicial Effect on the Outcome of the Trial
This issue is directed to two Dade County employees: Ms. Reed, the COUNTY's paralegal; and Mr. Rodriguez, a court interpreter who is also employed by Dade County.
During the trial, in an off-the-record remark outside of the presence of the Jury, Ms. Reed, a paralegal for the County Attorney, made the remark that the Jury wanted to go to the site to visit the Stockade. At the time the Court was very concerned as to whether Ms. Reed was `speculating' or how Ms. Reed might have obtained this information. The Court brought this to the attention of the attorneys, thus making a record note of the instance. The Court again instructed the Jury that they were not to share their notes, were not to visit the site unless ordered by the Court, and were to keep their own counsel and not form or express any opinions about the case until they had retired to the jury room to consider their verdict.
After this admonishment, ROONEY contends that the Jury had numerous conversations with a Mr. Rodriguez, whose office was adjacent to the jury room and who was observed in repeated contact with the Jury prior to trial commencing in the mornings and during recesses and lunch breaks.
The Court was gravely concerned during the course of the trial that the sanctity of the Jury may have been tainted.
This court has discretion to grant a new trial where a party's ex parte communication with a juror during trial may have influenced the juror. North Steile, [v. State] 65 So.2d 77 (Fla. 1952); Rudolph v. Gleason, 339 So.2d 298 (Fla. 3d DCA 1970 *1252 [1976]). What occurred during this trial is sufficient for the Court to resolve this issue in favor of ROONEY to alleviate any doubt as to whether the sanctity of the Jury was compromised.

Issue IV
Highly Prejudicial Evidence Regarding the County's Actual Delay Damages Was Improperly Introduced and Presented to the Jury Notwithstanding ROONEY's Stated Objections
This issue is directed to the COUNTY being permitted to offer evidence of both actual damages and Liquidated Damages. At trial, ROONEY renewed its objection to the COUNTY offering evidence of actual damages, which the Court ultimately overruled in deference to Pre-Trial rulings on this legal issue.
The Contract contained a Liquidated Damages provision for the benefit of the COUNTY which provided that the COUNTY recover from ROONEY $2,500/day for each day the project was delayed by ROONEY. Liquidated damages are in lieu of actual delay damages and an owner cannot elect to seek actual delay damages simply because the actual damages are greater than the liquidated damages. The COUNTY drafted and executed the Contract and agreed to accept the liquidated amount and should not have been permitted to present evidence with respect to the actual damages. Water v. Key Colony East, Inc., 345 So.2d 367 (Fla. 3d DCA 1977); Bruce Builders, Inc. v. Goodman, [Goodwin] 317 So.2d 868 (Fla. 4th DCA 1975).
The Court finds that ROONEY was highly prejudiced by the COUNTY presenting evidence of over $7 million in `actual' damages for temporary jail facilities, etc. This resulted in a diversion from the real issues and ultimately resulted in the Jury interpreting the Contract, rather than the Court.
In response to this issue, the COUNTY argued post-trial, as it did during trial, that if the COUNTY has to `live by the contract' and be bound by the Liquidated Damages clause, then ROONEY also has to `live by the Contract' and be limited by the No Damage for Delay clause, i.e., $1,000/day for delay. This is simply not the law and the Court rejects this argument.
Florida law recognizes several exceptions to the enforcement of a No Damage for Delay Clause, such as an owner's or its agent's knowing and unreasonable delay of a project, or interference with the project. Harry Pepper & Associates, Inc. v. Hardrives Co., Inc., 528 So.2d 72 (Fla. 4th DCA 1988); Southern Gulf Utilities, Inc. v. Boca Ciega Sanitary District, 238 So.2d 458 (Fla. 2d DCA 1970) cert. den. 240 So.2d 813 (Fla. 1970). ROONEY pled facts which clearly invoked these exceptions and offered substantial evidence at trial to support these legally recognized exceptions.
Conversely, the COUNTY has offered no legal authority for its position that the COUNTY is not bound by the Liquidated Damages clause and can elect to recover actual damages. The COUNTY cited the Court to Public Health Trust of Dade County v. Romart Construction Company, 577 So.2d 636 (Fla. 3d DCA 1991), as support for its position. However, in Romart the Third District Court of Appeal reversed the trial court for not enforcing the identical Liquidated Damages clause and for allowing the reasonableness of the damages to go to the jury, holding that the enforcement of the clause was for the court, not the jury, to determine. Romart, 577 So.2d at 637-638.
The foregoing considered, the Court finds that the presentation of actual damages by the COUNTY created undue prejudice and distracted the Jury from the real issues. As a matter of law, the COUNTY was bound by the Liquidated Damages provision and the Court so determines.
* * * * * *
This Court was not one of the eight judges who presided over pretrial procedures, and therefore did not have a first-hand opportunity to consider and rule upon the varied and significant purely legal issues which were presented pretrial. At trial, this Court observed first hand from the bench the testimony of witnesses, and the presentation of evidence. It is *1253 because of this `direct and superior vantage point' of a Trial Judge that discretionary power is afforded a Trial Judge to grant or deny a motion for new trial. Scandinavian World Cruises, Ltd. v. Cronin, 509 So.2d 1277 (Fla. 3d DCA 1987); Bankers Multiple Life Ins. Co. v. Farish, 464 So.2d 530 (Fla. 1985).
This was a long trial  some eight weeks  and the Court does not lightly set aside the Verdict of the Jury, particularly against our own County government which incurred hundreds of thousands of dollars in defense of the action. However, the Court firmly believes that the best exercise of this Court's discretion is to grant a new trial. In fact, considering the totality of the circumstances and the atmosphere during the trial, it is more than probable that neither party received a fair trial.
We affirm in part and reverse in part. We find no abuse of discretion as to three of the four grounds stated in the order granting the new trial, to wit those entitled "Issue I", "Issue II" and "Issue III" and affirm same, see and compare Scandinavian World Cruises v. Cronin, 509 So.2d 1277 (Fla. 3d DCA 1987); Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Martin v. State Farm Mutual Automobile Insurance Company, 392 So.2d 11 (Fla. 5th DCA 1980); Boca Teeca Corp. v. Palm Beach County, 291 So.2d 110 (Fla. 4th DCA 1974); Ratner v. Pressman, 235 So.2d 547 (Fla. 3d DCA 1970); Fla.R.Civ.P., 1.431; Sanchez v. International Park Condominium Association, Inc., 563 So.2d 197 (Fla. 3d DCA 1990); International Insurance Company v. Ballon, 403 So.2d 1071 (Fla. 4th DCA 1981); Blancher v. Metropolitan Dade County, 436 So.2d 1077 (Fla. 3d DCA 1983); Volk v. Goetz, 206 So.2d 250 (Fla. 4th DCA 1967). We reverse however as to that portion of the opinion entitled "Issue IV" providing that upon retrial Dade County is bound by the liquidated damages clause, see and compare Public Health Trust of Dade Co. v. Romart Construction, Inc., 577 So.2d 636 (Fla. 3d DCA 1991); T.A.S. Heavy Equipment, Inc. v. Delint, Inc., 532 So.2d 23 (Fla. 4th DCA 1988); Concrete Equipment Co. Inc. v. U.S. Leasing Corp., 439 So.2d 224 (Fla. 3d DCA 1983); Nicholas v. Miami Burglar Alarm Co., 266 So.2d 64 (Fla. DCA 1972), 297 So.2d 49 (appeal after remand); 339 So.2d 175 (affirmed in part, reversed in part) (1976). Whether the liquidated damages clause or the "No Damage for Delay Clause" will preclude presentation of evidence regarding the parties' actual damages are questions of law to be determined anew by the trial court.
The order under review is affirmed in part; reversed in part; and, remanded to the trial court for further proceedings consistent herewith.