**John McHUGH, Jr., Appellant**

v.

**PROCTOR GAMBLE PAPER PRODUCTS COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 28, 2000.

Filed April 26, 2001.

Reargument Denied June 29, 2001.

Gary M. Solomon, Jenkintown, for appellant.

Patrick Casey, Scranton, for appellee.

Before HUDOCK, STEVENS and MUSMANNO, JJ.

MUSMANNO, J.:

¶ 1 Appellant John McHugh, Jr. ("McHugh") appeals from the Judgment entered by the trial court, in favor of Appellee Proctor & Gamble Paper Products Company ("Proctor & Gamble"). McHugh claims that the trial court abused its discretion during the jury selection process by denying his challenges for cause. We agree with this contention, and believe that if ever a case cried out for a new trial, this case surely does so. Accordingly, we vacate the Judgment and remand for further proceedings.

¶ 2 This appeal derives from a personal injury action instituted by McHugh against Proctor & Gamble. McHugh was employed by Hydro Clean Tek ("Hydro"). Hydro often contracted with Proctor & Gamble to clean large industrial equipment in Proctor & Gamble's paper pulp mill, located in Mehoopany, Pennsylvania (the "Mehoopany plant"). On July 3, 1993, McHugh was working at the Mehoopany plant cleaning a brown stock washer. In order to clean the washer, McHugh stood on a scaffold, erected inside of the washer. The scaffold was designed, constructed and supplied by Proctor & Gamble, for use by Hydro's employees. When McHugh stepped on the scaffold, the scaffold collapsed and McHugh fell to the ground. As a result of this fall, McHugh suffered severe knee and ligament injuries.

¶ 3 On January 5, 1994, McHugh filed a Complaint against Proctor & Gamble, alleging that Proctor & Gamble negligently erected the scaffold. After numerous continuances, jury selection began on September 14, 1999. Counsel was presented with a panel of twenty-four prospective jurors for *voir dire*. Initially, counsel for Proctor & Gamble introduced himself and his co-counsel. Counsel then introduced Proctor & Gamble's in-court representative, Patrick Fellin ("Fellin"), an employee at the Mehoopany plant, who would be seated at the counsel table throughout the trial. N.T., 9/14/99, at 11. Counsel inquired if any of the prospective jurors knew Fellin. *Id.* Four members of the panel responded affirmatively. First, Troy Shultz ("Shultz") responded that he presently worked at the Mehoopany plant in the same department in which Fellin worked. Second, Daniel Groover ("Groover") and Nikki Skovran ("Skovran") stated that they knew Fellin because they, too, were employed at the Mehoopany plant. Third, Roy Dailey ("Dailey") responded that he had been employed in the same department of the Mehoopany plant as Fellin, but presently was retired from that employment. Finally, James Forte ("Forte") stated that Fellin was his son-in-law. At that point, McHugh's counsel requested that the trial court allow him to strike for cause all potential jurors employed by Proctor & Gamble, and to strike Forte because of his relationship with Fellin. The following discourse then ensued:

> BY THE COURT: Mr. Forte, do you feel given those circumstances that you could sit as a fair and impartial juror in

this case, render a fair and impartial verdict based solely on the evidence? (ANSWER BY [FORTE])[:] Yes, sir.

BY THE COURT: The challenge for cause to Mr. Forte is denied.... Okay, addressing those individuals giving [*sic*] your employment or past employment at Proctor and Gamble as the case may be do you feel that you could sit as a member of this jury and render a fair and impartial verdict based only on the evidence you hear in this case setting aside that other employment relationship and following the instructions of law you receive from me? Anybody who couldn't sit as a fair and impartial juror? Fine. The challenge for cause is denied.

*Id.* at 15–16.

¶ 4 McHugh's counsel noted his objection to the trial court's denial of his challenges for cause during a side bar conversation immediately following the denial of the challenges. *Id.* at 16–17. McHugh's counsel then proceeded to question all prospective jurors who were Proctor & Gamble employees. Counsel inquired as to the employees' feelings about the possibility that their rendering of a verdict against Proctor & Gamble would affect their employment. *Id.* at 17–19. The record indicates that no prospective juror responded to that line of questioning. *Id.* McHugh's counsel then focused on Forte, and asked, "Do you feel in any way that if the facts demonstrate and [the] law says that John McHugh can recover and you do render a verdict[,] do you feel in any way you'll be personally affected or your son-in-law will be affected by you sitting on this jury and

rendering that verdict?" *Id.* Forte responded, "I don't know if I'd be[;] he would." *Id.*

¶ 5 After counsel for both parties completed questioning the potential jurors, each exercised their peremptory challenges. McHugh's counsel used his peremptory challenges to strike Forte, Skovran, and Groover from the panel. McHugh's counsel utilized his final two peremptory challenges to strike Cynthia Lordi, an employee of an insurance company, and Michael Milbrode, an employee of a subcontractor which performed maintenance work for Proctor & Gamble, from the panel. Consequently, the jury panel consisted of fourteen persons, five of whom maintained a close relationship with Proctor & Gamble or had a family member who maintained a close relationship with Proctor & Gamble.[1]

¶ 6 Prior to the commencement of trial, McHugh presented a Motion for a mistrial based on the ground that the trial court forced him to use three peremptory challenges to remove Forte, Skovran and Groover, when those individuals should have been stricken for cause. The trial court denied McHugh's Motion. The case proceeded to trial and the jury "rather quickly" determined that Proctor & Gamble was not negligent. *See* Trial Court Opinion, 4/24/00, at 2.

¶ 7 McHugh filed post-trial Motions, in which he requested a new trial. McHugh claimed that, *inter alia*, the trial court's improper denial of his challenges for cause warranted a new trial. The trial court

---

1. The five jurors were (1) Shultz, a Proctor & Gamble employee, who presently worked in the same department as Fellin; (2) Michelle Gacha, a summer employee of Proctor & Gamble, whose father works for Proctor & Gamble; (3) Marie Packer, whose husband is employed by Proctor & Gamble in Fellin's department; (4) Roy Dailey, a retired Proctor & Gamble employee, who previously worked in Fellin's department; and (5) Barbara Landon, whose father-in-law was a retired Proctor & Gamble employee. Additionally, three of the jurors admitted that they, or their family members, had been treated by several of Proctor & Gamble's potential expert medical witnesses.

denied McHugh's post-trial Motions and McHugh filed this timely appeal.

¶ 8 On appeal, McHugh claims, as he has from the commencement of the jury selection process, that the trial court improperly denied his Motions to strike potential jurors Forte, Skovran, Groover and Shultz for cause.[2] We agree.

The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor.... A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions.

*Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 873 (2000) (citing *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293 (1996)). Our standard of review of a denial of a challenge for cause differs, depending upon which of these two situations is presented. *See Bridges*, 757 A.2d at 873. In the first situation, in which a juror has a close relationship with a participant in the case, "[t]he determination is practically one of law and[,] as such[,] is subject to ordinary review."[3] *Commonwealth v. Johnson*, 299 Pa.Super. 172, 445 A.2d 509,

512 (1982) (quoting *Commonwealth v. Colon*, 223 Pa.Super. 202, 299 A.2d 326, 328 (1972)). In the second situation, when a juror demonstrates a likelihood of prejudice by conduct or answers to questions, "[m]uch depends upon the answers and demeanor of the potential juror as observed by the trial judge and[,] therefore[,] reversal is appropriate only in the case of palpable error." *Id.* When presented with a situation in which a juror has a close relationship with participants in the litigation, we presume prejudice for the purpose of insuring fairness. *See Commonwealth v. Stewart*, 449 Pa. 50, 56, 295 A.2d 303, 306 (1972); *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295, 1297 (1977).

¶ 9 First, we will address the denial of McHugh's challenges for cause to prospective jurors Skovran, Groover, and Shultz. Proctor & Gamble employed each of these prospective jurors at the time of the trial in this case. We conclude that the employer/employee relationship evokes a presumption of prejudice so significant as to warrant disqualification of employees of a party.

¶ 10 Over ninety years ago, our Supreme Court recognized that, where "a litigant is in a position where he might exercise control over a juror, such as the relation of master and servant," that juror should not be permitted to serve on the jury. *Hufnagle v. Delaware & H. Co.*, 227 Pa. 476, 76 A. 205 (1910). The Court ultimately concluded that this concept applied to the relationship between employer and employee. *Id.* Until now, this precise issue

**2.** McHugh also claims that the trial court improperly allowed Proctor & Gamble to cross-examine McHugh regarding a letter written by counsel for McHugh during the course of settlement negotiations for a prior automobile accident. McHugh contends that the references to this letter prejudiced him and warrant a new trial. Additionally, McHugh claims that improper conduct and

comments of the jurors during deliberations warrant a new trial. Due to our disposition of the issue regarding jury selection, we decline to address these claims.

**3.** Ordinary review by an appellate court consists of determining whether the trial court abused its discretion or erred as a matter of law.

has not been the subject of review before this Court or our Supreme Court; however, both Courts have referenced the holding in *Hufnagle. See In re Shelley*, 332 Pa. 358, 377, 2 A.2d 809, 818 (1938) (Maxey, J., concurring in part and dissenting in part) ("Even a prospective juror can be challenged for cause if the case to be tried is one in which his employer is a party in interest."); *Pennsylvania Power & Light Co. v. Gulf Oil Corp.*, 270 Pa.Super. 514, 411 A.2d 1203, 1215, n. 23 (1979) (citing *Hufnagle* as supporting the contention that an employee has a direct and real interest which is sufficiently close to warrant upholding a challenge for cause to such juror).

¶ 11 Decisions to automatically exclude a prospective juror from a jury are based upon "real" or "close" relationships between the juror and the case due to financial, situational or familial ties with the parties, counsel, victims or witnesses. *Commonwealth v. Rough*, 275 Pa.Super. 50, 418 A.2d 605, 609 (1980). The relationship between an employer and an employee constitutes such a "real" or "close" relationship. We are persuaded by the explanation of the Court of Appeals of Nebraska regarding its determination that a potential juror may be challenged for cause, by any party to the litigation, if that juror is an employee of a party-litigant. *See Kusek v. Burlington N. R.R. Co.*, 4 Neb.App. 924, 552 N.W.2d 778, 782 (1996).

> The common-law rule has been explained as flowing from the presumption of loyalty of employees to their employer. The rationale ... is simply that jurors must be indifferent between parties.... However, we do not see the basis for the rationale in today's society as being so narrow as 'employees may be loyal to employers.' It is possible, and sometimes probable, that employees

are disloyal, antagonistic, hostile, spiteful or all of these things toward their employer.... While we cannot say for certain that ... employees are loyal or disloyal, it seems apparent that the potential is manifest that jurors who are [employees of a party] are unlikely to hear the case with a "clean slate" and an open mind.

*Id.* Furthermore, we note that many states have concluded that the relationship between an employee and his or her employer creates an implied bias or presumption of prejudice on the part of the employee. *See Merritt v. Evansville–Vanderburgh Sch. Corp.*, 735 N.E.2d 269 (Ind.Ct.App. 2000) (holding that the trial court should have granted plaintiff's challenges for cause to two employees of defendant corporation); *Hutchins v. DCH Reg'l Med. Ctr.*, 770 So.2d 49 (Ala.2000) (holding that the trial court had no discretion to deny plaintiff's challenges for cause directed toward two prospective jurors who were employees of the defendant); *People v. Rhodus*, 870 P.2d 470 (Colo.1994) (citing a statute which provides that a trial court must sustain a challenge for cause on the ground that a juror is an employee of a party); *Metropolitan Dade County v. Frank J. Rooney, Inc.*, 627 So.2d 1248 (Fla.Dist.Ct.App.1993) (holding that the trial court erred by failing to disqualify an employee of defendant county); *Carle v. McChord Credit Union*, 65 Wash.App. 93, 827 P.2d 1070 (1992) (holding that the trial court did not abuse its discretion by excusing a prospective juror for cause on the challenge by the employee plaintiff on the basis of implied bias).

¶ 12 Proctor & Gamble asserts that the jurors'/employees' assurances that they would render a fair and impartial verdict negated any presumption of prejudice arising from their relationship with Proctor & Gamble. We disagree, and note that the

specific facts of this case create a compelling basis for our conclusion. As the trial court noted, the Proctor & Gamble Paper Products Plant is one of the largest employers in northeastern Pennsylvania. *See* Trial Court Opinion, 4/24/00, at 2. The Mehoopany plant, alone, employs over 3,000 persons who reside in Wyoming and its surrounding counties. *Id.* Clearly, Proctor & Gamble maintains an overwhelming presence in the lives of its employees residing in that area, to the extent that the livelihoods of the employee and his or her family become wholly intertwined with Proctor & Gamble.[4] We cannot reasonably expect a person whose livelihood derives from a party to render an impartial verdict in a case involving that party, regardless of that person's belief that he or she can do so. "[I]t is almost impossible, however incorruptible one may be, not to bend before the weight of interest; and the power of employer over employee is that of him who clothes and feeds over him who is clothed and fed.... It would be virtually impossible for that relationship not to influence their evaluation of the merits of the case, even if they intended for it not to." *Merritt,* 735 N.E.2d at 271.[5]

¶ 13 In addition to challenging the three Proctor & Gamble employees,

McHugh also challenged prospective juror Forte for cause. As we stated previously, Forte admitted to the trial court that Fellin, the in-court representative for Proctor & Gamble, was his son-in-law. Clearly, the relationship between Forte and Fellin constitutes a close familial relationship, which precludes Forte's service as a juror in this case, regardless of his answers at *voir dire. See Commonwealth v. Dye,* 765 A.2d 1123, 1126 (Pa.Super.2000) (holding that, irrespective of a potential juror's answers to *voir dire* questions, certain relationships or situations compel striking a juror for cause).

¶ 14 Proctor & Gamble claims that the familial relationship between Forte and Fellin was irrelevant because Fellin's presence amounted only to "window dressing." Trial Court Opinion, 4/24/00, at 2. Proctor & Gamble asserted that Fellin would not testify, that he had no involvement in the incident with McHugh, and that he simply would sit at counsel table throughout the trial to represent Proctor & Gamble. N.T., 9/14/99, at 14. Regardless of Fellin's lack of participation in the trial, Fellin became the "face" of Proctor & Gamble, *i.e.,* for the purpose of this case, Fellin **was** Proctor & Gamble. Consequently, the tri-

4. However, we note that, despite Proctor & Gamble's strong presence in Wyoming County, counsel for Proctor & Gamble conceded, during oral argument, that there were sufficient prospective jurors, who had no relationship with Proctor & Gamble, to empanel a jury.

5. Our position is supported by two affidavits submitted by McHugh during post-trial Motions. Although our disposition of the jury selection issue renders a discussion of the trial court's decision regarding the affidavits unnecessary, we note that they demonstrate the close relationship an employee or a member of an employee's family may have with the employer. Jurors Linda Moore ("Moore") and Barbara Landon ("Landon"),

in their affidavits, aver that two jurors made comments which indicated partiality based upon their relationship with Proctor & Gamble. The affidavits state that one juror, the wife of a Proctor & Gamble employee, repeatedly referred to Proctor & Gamble as "we," and stated that she did not believe that McHugh had the right to sue a large company such as Proctor & Gamble. *See* Affidavit of Linda Moore. Additionally, Landon's affidavit states that a juror, who was presently employed by Proctor & Gamble, stated, "How can I go against Proctor & Gamble?" and "How can I be on this jury since I work for Proctor & Gamble?". *See* Affidavit of Barbara Landon.

al court erred by denying McHugh's motion to strike Forte for cause.

¶ 15 Even if we were to conclude that Fellin's presence at trial was not influential, the trial court should have granted McHugh's challenge for cause regarding Forte solely on the basis that Forte stated that he was unsure if he would be personally affected by serving as a juror and rendering a verdict in favor of McHugh.[6] N.T., 9/14/99, at 19. Forte also stated that his son-in-law would be affected by Forte's participation as a juror and by a verdict in favor of McHugh. *Id.* Generally, the trial court is in the best position to assess the credibility of a juror and determine if that juror is able to render a fair and impartial verdict. *Commonwealth v. Koehler*, 558 Pa. 334, 737 A.2d 225, 238 (1999). However, Forte's statement clearly demonstrates a likelihood of prejudice against McHugh; therefore, we cannot defer to the determination of the trial court that Forte could be fair and impartial. Consequently, we conclude that the trial court erred by denying McHugh's challenge for cause regarding Forte.

¶ 16 Judgment vacated; remanded for a new trial; jurisdiction relinquished.

---

6. When first asked by counsel for Proctor & Gamble if he could render a fair and impartial verdict, despite the presence of his son-in-law at Proctor & Gamble's counsel table, Forte responded that he could render a fair and impartial verdict. N.T., 9/14/99, at 15–16.