J-S32044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LOVELLE KINON WEAVER | : | |
| | : | |
| Appellant | : | No. 1400 MDA 2017 |

Appeal from the Judgment of Sentence April 17, 2017
in the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0000741-2016

BEFORE: PANELLA, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                         **FILED OCTOBER 29, 2018**

Appellant, Lovelle Kinon Weaver, appeals from the judgment of sentence following his jury conviction of aggravated assault, firearms not to be carried without a license, recklessly endangering another person, and discharge of firearm into an occupied structure.[1]  Following a bench trial, Appellant was also convicted of person not to possess firearms.[2]  We affirm.

We take the underlying facts and procedural history in this matter from our review of the certified record.

_____

[1] 18 Pa.C.S.A. § 2702(a)(4); 18 Pa.C.S.A. § 6106(a)(1); 18 Pa.C.S.A. § 2705 and 18 Pa.C.S.A. § 2707.1, respectively.

[2] 18 Pa.C.S.A. § 6105(a)(1).

_____

*   Retired Senior Judge assigned to the Superior Court.

David Stoltzfus testified that on October 7, 2015, there was a funeral at a church across from the intersection of Strawberry and Chester Streets. (*See* N.T. Hearing, 12/6/16, at 100).[3] His truck was parked on the corner of West Strawberry and Chester Street. (*Id.* at 98). He observed a man and a woman arguing. (*Id.* at 102). He described the man as wearing a "green hood sweater or greenish colors on it." (*Id.* at 103). The male was later identified as Dwaine London. (*Id.* at 171). Stoltzfus testified he heard shots and ran back to his truck. (*Id.* at 104). He did not see who was firing the shots. (*Id.* at 107).

Walter Gardner testified that he was sitting in his living room when he "heard a lot of noise down on Strawberry and Chester Street[.]" (*Id.* at 114). He saw "a guy running out the crowd running down the street. But again, I see another guy running behind this guy shooting." (*Id.* at 115). "He was dressed in white." (*Id.* at 118). He testified he was a "Black guy." (*See id.*). "He was (sic) slim guy, little slim fellow." (*See id.*).

The Commonwealth called Reverend Wayne Scott. (*Id.* at 146). He was officiating at the funeral for Jared Weaver. (*Id.* at 147). He testified there was a crowd outside of the church and two people were fighting. (*Id.* at 149). He testified "[s]omebody came running out of the crowd shooting." (*See id.* at 151). He saw who was firing the shots. (*Id.* at 152). The shooter

---

[3] The funeral was for Jared Weaver, Appellant's brother. (*Id.* at 147, 183).

was a man who he thought was one of Jared Weaver's brothers. (*See id.*). He was asked if he actually saw him with a gun and the Reverend responded, "Yeah." (*See id.*). He was asked to describe "[t]he person, the family member, the brother that was doing the shooting[.]" (*Id.* at 154). He testified that he was tall and slim. (*See id.*). He met him when he went to the family's house prior to the funeral because he was the pastor who was going to perform the eulogy and that is the protocol. (*See id.*). Reverend Scott testified that the person who was doing the shooting was at the house. (*See id.*).

Captain Michael Winters was involved in the investigation of the October 7, 2015 incident. (*Id.* at 166). He testified that the person wearing a green jacket was identified as Dwaine London. (*Id.* at 171). He was shown a "still image" which he testified was "captured from a Lancaster Safety Coalition ["LSC"] camera." (*Id.* at 177). Captain Winters described it as "a still image of a black male wearing a white shirt outside the church at Bethel AME." (*See id.*). He testified further as follows:

> The Commonwealth: My understanding, you, the police received information that there was an individual who had regular contact with a person you suspected to be the shooter, and you developed the name of Lovelle Weaver; is that true?
>
> Captain Winters: Yes.
>
> Q: All right. And this person who had regular contact, the name is Laura Krautler . . . .
>
> A: Yes.

Q: . . . Did you send those-those specific still photographs to Ms. Krautler?

A: Yes, I did.

. . . .

Q: [S]he confirmed that the subject, tall, thin, African-American man wearing all white looks like Lovelle Weaver. Is that what she said to you?

A: Yes, she did.

Q: Okay. And on October 21, 2015, you then informed Detective [Eric] McCready of your interactions and discussions with Laura Krautler, correct?

A: Yes, I did.

(*Id.* at 188-89).

Laura Krautler testified, *inter alia*, as follows:

The Commonwealth: . . . My understanding is that you know someone named Lovelle Weaver?

Laura Krautler: I do.

Q: And that you had some repeated contact with Lovelle Weaver in the year 2014?

A: That's correct.

Q: Is it correct that you had two specific face-to-face meetings with Lovelle Weaver sometime during that year?

A: Yes.

. . . .

Q: Can you give us a physical description of Lovelle Weaver?

A: He is a tall, thin, black man.

Q: In October 2015, were you contacted by the Lancaster City Bureau of Police regarding a shots fired incident that occurred in Lancaster County in October of 2015?

A: Yes.

Q: My understanding is that Lancaster City Police sent you two digital images . . . through the computer; is that true?

A: Correct.

Q: And that you identified a black male wearing all white in these images as being Lovelle Weaver?

A: Correct.

Q: Is the person you know as Lovelle Weaver, is that person in the courtroom right now?

A: He is.

Q: Can you please point him out for me?

A: [Indicating.]

(*Id.* at 196-97). The witness identified Appellant. (*Id.* at 197).

Detective McCrady testified that he is employed with the Lancaster City Bureau of Police. (*Id.* at 200). He was involved with the investigation of the October 7, 2015 incident. (*See id.*) His job was to look at the video "footage from the Coalition." (*Id.* at 201-02). He testified that he recognized Lovey White from the video and from a comment he posted on Jared Weaver's Facebook page. (*Id.* at 207-08). He stated the photographs of Lovey White were identical to another person in the LSC footage. (*Id.* at 208). When asked which person, he stated "[t]he-black male, tall, with the braids pulled back, wearing all white, with an emblem on his T-shirt." (*See id.*).

- 5 -

The jury saw the videos and the Facebook photograph of Lovey White. (*Id.* at 215). Detective McCrady stated "[t]he person in the photograph appears to be Lovelle Weaver." (*Id.* at 217). He testified that Lovelle Weaver's father's name was White. (*Id.* at 223). The Detective noted that Lovell Weaver and Jared Weaver have the same mother and different fathers. (*See id.* at 224).

Following a jury trial, Appellant was convicted of Count 1 and Counts 3 through 9.[4] On January 23, 2017, following a bench trial, Appellant was convicted of count 2. Appellant's sentence was deferred to allow for a presentence investigation ("PSI") report. On April 17, 2017, a sentencing hearing was held. Appellant was sentenced to eighteen to forty-four years' imprisonment. Appellant filed a timely post-sentence motion, which was denied on August 7, 2017. The instant, timely appeal followed.[5]

On appeal, Appellant raises the following questions for our review.

> I. Did the trial court err by seating a juror with a personal relationship with a prosecution witness, after the juror repeatedly said he "would not question" the witness, and would "take whatever [the witness] says as absolute truth"?

_____

[4] Appellant was charged with five counts of recklessly endangering another person.

[5] In compliance with the trial court's order, Appellant filed a statement of errors complained of on appeal on September 21, 2017. *See* Pa.R.A.P. 1925(b). On January 9, 2018, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a). The trial court opined that Appellant's 1925(b) statement was vague, however, the court declined to conclude that the issues were not properly preserved. (Trial Court Opinion, 1/9/18, at 4).

II. Did the trial court's erroneous admission of inadmissible evidence under the guise of explaining the police "course of conduct" warrant a new trial?

III. Was the verdict premised on legally insufficient evidence where no witnesses directly identified [Appellant] as the man who fired on the street?

IV. Was the trial court's aggregate sentence of 18 to 44 years in prison improper?

A. Did the trial court's imposition of nine consecutive terms of imprisonment, several of which were in the aggravated range, present a substantial question for this Court's review?

B. Was the court's sentence unreasonable?

V. Does the statutory mechanism for reviewing the discretionary aspects of sentencing violate the Pennsylvania constitutional right to appeal?

(Appellant's Brief at 11).

Appellant first avers "the trial court err[ed] by seating a juror with a personal relationship with a prosecution witness, after the juror repeatedly said he 'would not question' the witness, and would 'take whatever [the witness] says as absolute truth[.']" (*Id.* at 31). Appellant argues that the juror should have been stricken because he had a genuine, personal relationship with the witness, *viz.*, the Reverend Wayne Scott. (*See id.* at 34). Because of the close relationship, Appellant contends that the juror was presumptively biased. (*See id.*).

Our standard of review of a court's decision not to strike a potential juror is well-settled:

The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor.... A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions.  Our standard of review of a denial of a challenge for cause differs, depending upon which of these two situations is presented. In the first situation, in which a juror has a close relationship with a participant in the case, the determination is practically one of law and as such is subject to ordinary review. In the second situation, when a juror demonstrates a likelihood of prejudice by conduct or answers to questions, much depends upon the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in the case of palpable error. When presented with a situation in which a juror has a close relationship with participants in the litigation, we presume prejudice for the purpose of [en]suring fairness.

*McHugh v. Proctor & Gamble Paper Prod. Co.*, 776 A.2d 266, 270 (Pa. Super. 2001) (footnote, citations, internal quotation marks, and original modifications omitted).  "Generally, the trial court is in the best position to assess the credibility of a juror and determine if that juror is able to render a fair and impartial verdict." *Id.* at 273.

In the case *sub judice*, the following exchange took place between the court and the juror:

> The Court: And I understand that as a result of the opening statements, you believe that you are acquainted with one of the witnesses?
>
> A Juror: Yes.

The Court: And that would be whom?

A Juror: Reverend Wayne Scott.

. . . .

I went to Lancaster Bible College with him. He will not recognize me . . . .

The Court: How well acquainted are you with him?

A Juror: I know him by sight. . . . [H]e probably does not know me.

The Court: Okay.

A Juror: I do know that I can say-I'm sorry, very nervous. But I do know that anything he would say I will take as absolute truth, so I-

The Court: So you would not be able to employ the same standard of credibility to him as you would employ in evaluating another witness's testimony?

A Juror: If he says it, it's the gospel. I will take whatever he says as absolute truth.

The Court: Do you realize that there is a difference in assessing someone's credibility in considering their testimony in context and considering them to be untruthful?

A Juror: In that-I'm sorry.

The Court: Well, that a person can give an account of something that happens, and in the context of an entire situation, while this might be a completely truthful person who does not lie, and yet, would you be able to listen and say, well, I can see that from his vantage point or given his perspective, he might not have seen everything, heard everything, realized everything. Would you be able to evaluate his testimony and pick it apart like that?

A Juror: That I could, yes. I think that, yes, I could.

- 9 -

. . . . .

The Court: Does it make a difference to you in assessing the evidence that Reverent Scott happens to be testifying for the Commonwealth instead of for the defense? Do you think it makes a difference?

A Juror: No. If I may just say, what prompted my whole thought and my whole thing is, oh, I do know him, is that I believe that I-I believe that I heard in the opening statement that, you know, he was-he was talking with the police, that he identified- he says, yes, I know that this person is this person, that type of- that type of testimony I would not question. I would not question that he's telling the truth about that.

The Court: As far as he knew it?

A Juror: Right, right.

The Court: If someone asked a question that went to the foundation of his belief, however, would you be able to listen-regard his testimony as, well, I can understand why he believed that, however, another witness's testimony makes me realize that perhaps his belief was based on erroneous understanding, that's the essence of making a credibility determination.

A Juror: Yes, I can make that in good conscious (sic), yes.

The Court: Because that's not lying.

A Juror: Yeah.

The Court: You know, he believes something and believes it to be true, but it can be based on an erroneous or mistaken set of perception or beliefs.

A Juror: Right, yes.

(*See* N.T. Hearing, 12/5/16, at 81-83, 89-90). The court also heard the following testimony:

A Juror: I believe that it's my assumption that every witness that's presented here will be telling the truth of what they saw.

[Commonwealth]: Okay. Not just Reverend Scott.

A Juror: All witnesses would be doing that. That's my assumption.

[Commonwealth]: What I'm trying to get to is, I don't want to tell you what's going to happen in the case, but truth- there's a difference between objective truth and just testifying to what you think you saw. Some people can be mistaken. Some people's perception may be limited. Some people can see better than others. Some people closer, you can see more, as opposed to being farther away. So do you understand that-the difference between telling the jury what you saw to the best of your recollection versus objective truth versus lying? Do you understand that difference?

A Juror: Yes.

(*Id.* at 85).

The trial court concluded:

I am less concerned about the fact that they may have gone to Lancaster Bible College together some years back because I have to agree, the mere fact that you ever met someone, you can say you know them, but that's different than a close association that would give rise to a concern of partiality bias, prejudice, the inability to serve as a fair and impartial juror.

To me, the matter goes more to evaluating this juror's understanding of the credibility determination of all of the witnesses. Had he said, I, or my in-laws even, have regular social interaction with this individual, I would be concerned about the acquaintanceship, but that was far from the case.

And I was listening closely to the way in which each of us tried to ask him about his understanding of the credibility standard and how it applied, . . . and I am satisfied that although he said, I would believe anything Reverend Scott

- 11 -

said, that he made that statement and still is able to apply the credibility determination because all of the witnesses take an oath. And so presumably, every juror is going to believe that each witness is going to abide by that oath and be truthful to the best of their knowledge and belief. And to me, this juror has indicated that he can evaluate the basis of Reverend Scott's knowledge and belief and assess his credibility as he would assess the credibility of the other witnesses.

(*Id.* at 93-94).

The trial court opined "[u]pon reviewing the record, and recollecting upon the reasoning behind its decision at trial, the court is satisfied that, within its sound discretion, its decision not to remove the juror from the panel was the correct one, and there exists no abuse of discretion with respect to [Appellant's] first issue." (*See* Trial Ct. Op., at 9).

Instantly, on independent review, we conclude that Appellant has failed to show that the juror had a direct, close, familial relationship with the Reverend. Accordingly, we review whether the trial court's assessment of the juror's answers and demeanor was palpable error. *See McHugh*, 776 A.2d at 270. The trial court is in the best position to assess the credibility of a juror and determine if the juror can render a fair and impartial verdict. *Id.* at 273. As evidenced by both the Commonwealth's and the trial court's questions and the juror's answers, the trial court had sufficient reason to conclude the juror would properly consider all testimony in context with the evidence presented. Appellant's first question does not merit relief.

Second, Appellant contends "the trial court's erroneous admission of inadmissible evidence under the guise of explaining the police 'course of

conduct' warrant[s] a new trial." (Appellant's Brief at 38). Appellant argues "the court erred in allowing Rev. Scott to testify as to hearsay statements made by non-testifying witnesses" as to the identity of the alleged shooter. (*Id.* at 43). Appellant avers "the trial court compounded this improper testimony by allowing Cpt. Winters to testimony (sic) extensively about hearsay statements made by Rev. Scott, Joe Hamilton, and Laura Krautler[.]"[6] (*Id.* at 44). Lastly, the court erroneously permitted Detective McCrady to provide a description of the shooter based upon his viewing of the video. (*Id.* at 45). We disagree.

> When reviewing a challenge to the admissibility of evidence, we note that [t]he admissibility of evidence rests within the sound discretion of the trial court, and such a decision will be reversed only upon a showing that the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Hearsay is defined as a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence[,]

---

[6] The trial court opined "[w]hile the statements made by Reverend Scott and Mr. Hamilton were objected to by [Appellant] at trial, and thus properly preserved for appeal, no objections were made to the testimony proposed by the Commonwealth at sidebar or the testimony subsequently given by Captain Winters with respect to Ms. Krautler's identification of [Appellant]. Therefore, any issues pertaining to Captain Winters' testimony about Ms. Krautler's identification of [Appellant] was (sic) not properly preserved . . . ." (Trial Ct. Op., at 10-11) (footnote omitted). (*See* N.T. Hearing, 12/6/26, at 161, 188-89).

- 13 -

by other rules prescribed by the Pennsylvania Supreme Court, or by statute.

***Commonwealth v. Gray***, 867 A.2d 560, 569–70 (Pa. Super. 2005), *appeal denied*, 879 A.2d 781 (Pa. 2005) (citations and quotation marks omitted).

> It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted. This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest.

***Commonwealth v. Palsa***, 555 A.2d 808, 810 (Pa. 1989) (citations and quotation marks omitted).

At trial, the court stated as follows:

> [W]hat's being offered is not being offered for the truth of the matter asserted. It is being offered to show courses of conduct in a police investigation.
>
> . . . .
>
> [T]hat is why there's an exception to show course of conduct, [because] you cannot rely on the absence of evidence when you are proceeding with a police investigation. You go based on what is told to you by individuals. Whether it's true or not, you don't know or what they tell is what you do as an investigator to take the next step. So I haven't heard anything new that tells me that this is beyond evidence offered to show course of conduct. . . . For the police officers' investigation, so that means everyone [Captain Winters] spoke to in the chain of his investigation, as long as it's not be offered for the truth of the matter asserted, is legitimate, admissible evidence to demonstrate why he took the steps he took.

(***See*** N.T. Hearing, 12/6/16, at 163-64).

- 14 -

The trial court opined: "[T]he court anticipated an objection by [Appellant] to the testimony at issue, as its nature had been discussed by counsel prior to trial. Having been prepared for the Commonwealth's offer of proof and [Appellant's] objections, the court could confidently conclude that what was being offered was not being offered for the truth of the matter asserted, as its purpose was to show a course of conduct in a police investigation." (*See* Trial Ct. Op., at 11).

We conclude the trial court did not abuse its discretion in finding Captain Winters' testimony admissible. *See Palsa*, 555 A.2d at 810; *Gray*, 867 A.2d at 569–70. We agree with the trial court's assessment of Captain Winters' testimony, as it clearly established how the police proceeded with its investigation. In regard to Reverend Scott's testimony, it does not appear that Appellant identified his testimony, as allegedly inadmissible hearsay, as a specific point of error in Appellant's Rule 1925(b) statement. Arguably, we could find the issue waived. Even on the merits, however, it is evident that Reverend Scott's statements led police to eventually contact Laura Krautler, which furthered their investigation. We find no error in the trial court's admissibility determinations.

Additionally, Appellant contends the trial court erred in permitting Detective McCrady to testify about his review of the LCSC video from the scene. (Appellant's Brief at 45). The video captured the shooting in question. (*See* N.T. Hearing, 12/5/16, at 69-70). In the instant case, the video was

admitted into evidence. The trial court permitted the Detective to testify as to his course of conduct based upon what he observed in the video. (**See** Trial Ct. Op., at 13). The trial court held that the Detective "could testify as to what he observed and what actions, if any, he took in furtherance of those observations." (**See id.**).

In **Commonwealth v. Lewis**, 623 A.2d 355, 356-59 (Pa. Super. 1993), this Court reversed a conviction where a police officer testified as to the contents of a surveillance video tape but a copy of the tape was not introduced into evidence. Instantly, because the video tape was introduced into evidence, we discern no abuse of discretion. **See id.**

Third, Appellant contends "the verdict was premised on legally insufficient evidence where no witnesses directly identified [Appellant] as the man who fired on the street." (Appellant's Brief at 47).

Our standard of review is well-settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

**Commonwealth v. Rayner**, 153 A.3d 1049, 1054 (Pa. Super. 2016), *appeal denied*, 169 A.3d 1046 (Pa. 2017), and *cert. denied sub nom*. **Rayner v. Pennsylvania**, 138 S. Ct. 976 (2018) (citation omitted).

- 16 -

In this case, Appellant argues the evidence was insufficient to prove he was the shooter because "[t]he Commonwealth presented no direct evidence" that he was the man who committed the offense.[7]  (Appellant's Brief at 48). We disagree.

Walter Gardner testified that he saw the shooter and described him as a slim, black male dressed in white.  Reverend Scott testified he saw someone shooting and he thought the shooter was one of Jared Weavers brothers.  He described the male as tall and slim.  He had met the man prior to the funeral. Captain Winters testified that he saw a "still image" from the Lancaster Safety Coalition Camera of a black male wearing a white shirt.  Laura Krautler gave a description of Appellant.  Detective McCrady testified that he looked at the video footage and recognized Appellant.  The video was played for the jury.

_____

[7] Appellant raised the following issue in his Rule 1925(b) statement of matters complained of on appeal:  "Whether the verdict was premised on legally insufficient evidence because the Commonwealth's evidence did not conclusively establish that [A]ppellant was the shooter?" (1925(b) Statement, at 3).  "When an appellant challenges the sufficiency of the evidence, this Court has made clear our requirement that 'an appellant's Rule 1925(b) [S]tatement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient.'"  *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted).  Appellant filed an overly broad Rule 1925(b) statement, thus waiving his challenge to the sufficiency of the evidence.  *See id.*  Although Appellant has not identified the element(s) of the crime(s) for which the evidence was insufficient, we will address the issue.

Based on the above evidence and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude the evidence was sufficient to establish that Appellant was the shooter. **See Rayner**, 153 A.3d at 1054. The jury was presented with plenty of circumstantial evidence to form a conclusion that Appellant was the shooter. The jury is not required to have direct evidence of Appellant's identification, and Appellant cites no case stating otherwise. Appellant's sufficiency challenge does not merit relief.

Fourth, Appellant contends "the trial court's aggregate sentence of 18 to 44 years in prison was improper." (Appellant's Brief at 49). Appellant argues that the imposition of nine consecutive sentences, some in the aggravated range, was unreasonable and should be vacated. (**Id.** at 54).

Appellant's issue challenges the discretionary aspects of his sentence.

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.
>
> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [*see* Pa.R.A.P. 2119(f) ]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

**Commonwealth. v. Disalvo**, 70 A.3d 900, 902 (Pa. Super. 2013) (quotation marks and citations omitted).

- 18 -

Instantly, Appellant filed a timely notice of appeal, and preserved his claim that his consecutive, aggravated-range sentence was an abuse of discretion in the trial court. (*See* Post-Sentence Motion, 5/31/17). He has also included in his appellate brief a separate Rule 2119(f) statement. Therefore, we proceed to determine whether Appellant has presented a substantial question that the trial court abused its discretion in sentencing him. *See Disalvo*, 70 A.3d at 902.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* at 903 (citation omitted).

In his Rule 2119(f) statement, Appellant claims the sentence raises a substantial question because the court imposed nine consecutive sentences without adequate support, and imposed three of the sentences in the aggravated range without sufficient justification. (Appellant's Brief at 8-9). Appellant contends the sentence was excessive because "all counts related to essentially the same conduct- shooting a firearm on a street." (*Id.* at 9). He develops the claim in the argument section of his brief, asserting that his sentence was excessive because of its consecutive nature in light of the criminal conduct at issue. (*Id.* at 50). Appellant argues the court failed to explain its reasoning for imposing a sentence outside of the sentencing

- 19 -

guidelines. (*Id.* at 51). Appellant avers the sentence did not take into consideration his rehabilitative needs. (*Id.* at 54).

In *Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010), this Court held "the preliminary substantial question inquiry . . . is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Id.* at 588. "Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Id.* at 587. "To demonstrate that a substantial question exists, a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider [the] general guidelines provided by the legislature." *Commonwealth v. Mouzon*, 812 A.2d 617, 622 (Pa. 2002) (quotation marks and citations omitted). "[A]n [a]ppellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question." *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 27 (Pa. Super. 2017), *appeal denied*, 174 A.3d 1029 (Pa. 2017) (citation omitted).

Here, Appellant claims that his sentence was excessive because of its consecutive nature despite their basis on the same conduct and, further, that the trial court failed to consider his rehabilitative needs, thus raising a substantial question. *See Mouzon*, 812 A.2d at 622; *Johnson-Daniels*, 167

A.3d at 27; and **Mastromarino**, 2 A.3d at 588. We conclude Appellant has raised a substantial question and proceed to review the merits of Appellant's claim. **See Johnson-Daniels**, 167 A.3d at 27.

Our standard of review of is well-settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Disalvo**, 70 A.3d at 903 (citation omitted).

"[I]t is well accepted that [i]n imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." **Commonwealth v. Bowen**, 55 A.3d 1254, 1265 (Pa. Super. 2012), *appeal denied*, 64 A.3d 630 (Pa. 2013) (citation and quotation marks omitted). Moreover, we have long stated that "42 Pa.C.S. Section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." **Johnson-Daniels**, 167 A.3d at 28 (citation omitted). "[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regard the defendant's character and weighed those

considerations along with mitigating statutory factors." ***Commonwealth v Finnecy***, 135 A.3d 1028, 1038 (Pa. Super. 2016), *appeal denied*, 159 A.3d 935 (Pa. 2016) (citation omitted).

In this case, our review of the certified record belies Appellant's claim that the trial court abused its discretion in imposing an excessive sentence considering that all counts related to the same conduct. At sentencing, the court considered the presentence investigation report. (***See*** N.T. Sentencing Hearing, 4/17/17, at 4). The court considered Appellant's father's statements, Appellant's statements and the argument of his counsel. (***Id.*** at 7-11).

The trial court opined:

> Although Counts 1, 3, and 9[8] were in the aggravated range, none of [Appellant's] sentences exceeded the statutory maximum, and as such, were within the sentencing guidelines. With respect to the aggravated range sentences, as well as the consecutive sentences, the court gave an extensive narrative at [Appellant's] Sentencing Hearing discussing his behavior and the reasons why such impositions were necessary. When fashioning [Appellant's] sentence, the court took into account numerous considerations comprising the totality of the circumstances surrounding [Appellant] and his crimes, including those enunciated in 42 Pa.C.S. § 9721(b) (i.e. requiring consideration of the general public and its safety, the gravity of the offense, and [Appellant's] rehabilitative needs), as well as the information contained in the PSI report.
>
> . . . .
>
> Great consideration was given to [Appellant's] situation and the circumstances surrounding it. The court referenced

---

[8] Aggravated Assault, Firearms Not to be Carried Without a License; and Discharge of Firearm into an Occupied Structure, respectively.

> extensive documentation, as well as counsel's arguments and [Appellant's] statements at the sentencing hearing.
>
> . . . .
>
> The court is satisfied that the aggregate sentence of eighteen (18) to forty-four (44) years' incarceration reflects the magnitude of [Appellant's] crimes and achieves the requisite rehabilitative, deterrent, and safety objectives.

(Trial Court Opinion, 8/7/17, at 6-8).

We discern no abuse of discretion. *See Disalvo*, 70 A.3d at 903. Here, the sentencing court stated that it had reviewed the PSI, the sentencing guidelines, Appellant's remarks, and counsel's arguments. *See Finnecy*, 135 A.3d at 1038. Moreover, we have long stated that the sentencing court has discretion to impose its sentence concurrently or consecutively. *See Johnson-Daniels*, 167 A.3d at 28. Thus, Appellant's challenge to the discretionary aspects of his sentence lacks merit.

Lastly, Appellant avers "[i]f the only issue raised by the appellant is a discretionary sentencing issue, and the Superior Court chooses not to review the sentence, the appellant loses his right to appeal."[9] (Appellant's Brief at 59). Appellant states that "[i]f this Court determines that his claims do not raise a substantial question, however, his constitutional right to appeal will

---

[9] Instantly, we note Appellant did not raise this issue in his post-sentence motion. He raised it in his Rule 1925(b) statement. However, "[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003) (citation omitted).

have been denied." (*Id.*). However, this Court has addressed the discretionary aspect of his sentence. Therefore, we need not address this issue. Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Panella joins the Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2018